Seaton Publishing Company v. Commissioner.
Seaton Publ. Co. v. Commissioner
Docket Nos. 43548, 45227.
United States Tax Court
1954 Tax Ct. Memo LEXIS 251; 13 T.C.M. (CCH) 303; T.C.M. (RIA) 54104; March 31, 1954
*251 Basis of tangible assets for depreciation determined. James D. Conway, Esq., Tribune Building, Hastings, Neb., for the petitioner. Melvin A. Bruck, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: Respondent determined the following deficiencies in income tax: Fiscal Year
Docket No.
Ended
Deficiency
43548
June 30, 1947
$4,965.94
43548
June 30, 1948
2,728.28
45227
June 30, 1949
3,417.12
Several adjustments are either uncontested or agreed to and can be reflected in a computation under Rule 50. The principal issue for determination is the basis for depreciation purposes of certain depreciable tangible property. Findings of Fact The stipulated facts are found accordingly and the stipulation is included herein by reference. Petitioner is a Nebraska corporation with its principal office at Hastings, Nebraska. Its tax returns were filed with the collector of internal revenue for the district of Nebraska. On July 1, 1937, a partnership composed of Fay Seaton, Fred Seaton and Richard Seaton, each having a one-third interest, purchased a going newspaper in Hastings, Nebraska, known *252 as Hastings Daily Tribune. The total consideration paid for the business was $185,000. From the time of purchase until July 1, 1946, the newspaper was operated by the partnership under the name of The Hastings Daily Tribune. Of the total consideration paid by the partnership, $39,992.24 was allocated to intangible assets consisting of circulation lists and Associated Press and United Press franchises at cost. In 1942 the partnership purchased from another publishing company part of its assets including a daily newspaper called The Spotlight. Of the consideration paid, $4,207.07 was allocated to the subscription list. This amount was added to the partnership's intangible account, which with a later small adjustment brought the balance in that account up to $44,200, which remained the balance until July 1, 1946. On July 1, 1946, the partners, as individuals, entered into an agreement with petitioner which provided in part as follows: "THIS AGREEMENT, Made and entered into this 1st day of July, 1946, by and between Fay N. Seaton, as first party, Fred A. Seaton, as second party and Richard M. Seaton, as third party, and the Seaton Publishing Company, Hastings, Nebraska, a Nebraska *253 Corporation, as fourth party, and hereinafter referred to as Corporation, WITNESSETH: "WHEREAS, the first, second and third parties are the owners of the Hastings Daily Tribune, a newspaper publication of Hastings, Nebraska, and are also the owners of certain real estate consisting of the premises known as the Tribune Building, Hastings, Nebraska, and other miscellaneous real estate. "AND WHEREAS, the parties are as of this date, selling all the above and described property to the Corporation and desire by the terms of this memorandum agreement to set forth the details of said transaction. "FOR VALUE RECEIVED, and in consideration of the mutual promises and agreement to be performed by the respective parties hereto, it is agreed: "1. That the total sale price of all of the property involved shall be the sum of $204,227.66, the detail thereof and the specific items comprising the same amount being set forth in Exhibit 'A', * * * "2. It is understood and agreed that the property being sold and purchased hereunder is for the respective amount identified as to the various items, after the credit allowances thereon as set forth in Exhibit 'A'; and that no other property of any *254 kind and nature is being sold under this agreement except as specifically identified herein." Among the items listed in Exhibit 'A' attached to the agreement were the following: Office Furniture and Fixtures
$ 5,176.11
Plant Equipment
109,922.90
Land - Tribune Building
5,000.00
Tribune Building
50,000.00
Thet net book value of the above items per the partnership books was as follows: Office Furniture and Fixtures
$ 3,850.00
Plant Equipment
30,875.00
Land - Tribune Building
4,000.00
Tribune Building
42,830.00
The excess of the values ascribed in the agreement to the four groups of assets itemized above over the book values was reported by the partnership on its final partnership return as a long-term capital gain. All other partnership assets specified in the agreement were included at the same figure at which they had been carried on the partnership books. The following assets carried on the partnership books were not mentioned or included in the agreement: Morgue
$ 2,500.00
Intangibles
44,200.00
The values ascribed in the agreement to the office furniture and fixtures, the plant equipment, and the land and *255 building set out above represent the fair market value of those items. Petitioner paid for the assets received under the agreement in capital stock and corporate notes payable. After the agreement of July 1, 1946, the partnership was dissolved and ceased to operate. Petitioner continued to publish The Hastings Daily Tribune after July 1, 1946, much as it had been published theretofore. Though not mentioned in the agreement with the partnership, petitioner took over and used the newspaper archives or morgue, the Associated Press and United Press franchises or contracts, the subscription lists, delivery routes and the carrier, dealer and newsstand outlets. There was no interruption in publication of the paper. On its income tax returns petitioner claimed depreciation on office furniture and fixtures, plant equipment, and building using as a basis the "cost" of those items as set out in the agreement. Respondent reduced the claimed depreciation and explained the reduction as follows: "It is held that the basis of the assets on which depreciation was claimed is incorrect in that good will is included therein. No depreciation is allowable on good will under the provisions of *256 Section 23(1) of the Internal Revenue Code." Opinion In his opening statement counsel for respondent contended that the transaction between petitioner and the partnership fell within section 113(a)(8). This contention was not argued on brief and we treat it as abandoned. Respondent's alternative contention is that the transaction was a "bargain purchase" by petitioner; that in addition to the items enumerated in the agreement between petitioner and the partnership, petitioner acquired other items including subscription lists, press service contracts, trade name, etc. all of which constituted "good will." Respondent computed the value of good will "under the method set forth in A.R.M. 34" and arrived at a good will value of $290,476.67. Using this figure and the figures used by petitioner for the tangibles in the agreement, respondent allocated the total purchase price set forth in the agreement proportionately among all assets which respondent argues were actually acquired by petitioner under the agreement. This necessarily reduced the purchase price of the depreciable tangible assets here in question and resulted in the reduced depreciation determined by *257 respondent. Respondent's action cannot be approved. We have here what we consider to be a valid and bona fide agreement of sale between the partnership and petitioner covering specified asset items with the total purchase price allocated among the various items. Because the members of the partnership were also the moving force in the incorporation of petitioner and "sat on both sides of the table" in working out the agreement we have carefully scrutinized the record for indications of sham. We have found none. No doubt the newspaper business which was involved had a valuable good will. It is apparent to us, however, that good will was not dealt with in the agreement and was not sold under the agreement. The core of our problem is to determine the basis for depreciation of the tangible items specifically itemized in the agreement. The values therein set forth tallied with the fair market value of those items and the purchase price as thus agreed on was in fact paid over. This is not a case involving inflated or unreal values. As we view it, the price paid for the items in controversy was arrived at in good faith, should be taken as the cost of such property, and should furnish the *258 basis on which depreciation is to be taken. Respondent apparently recognizes that a sale has taken place and that the fair market value of the tangibles in question is as claimed by petitioner. Nevertheless, respondent contends that if we view the transaction "as a whole," petitioner actually acquired for the $204,227 specified in the agreement not only the itemized assets set forth therein (which in effect he agrees had a fair market value of $204,227) but in addition, good will of a value of $290,476.67. In other words respondent says that petitioner bought a $494,000 business for $204,000. Whether or not petitioner acquired the good will, we are convinced from the record that petitioner paid $5,176.11 for the office furniture and fixtures, $109,922.90 for the plant equipment, $5,000 for land and $50,000 for the Tribune Building. Those figures were based on appraisals and are fair. They represent the cost to petitioner of the described assets and depreciation should be based thereon. Decision will be entered under Rule 50.